UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUSSELL GILLETT, JR., | No. 2:13-cv-2405 CKD |
| Plaintiff, | |
| v. | ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying applications for Disability Income Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), respectively. For the reasons discussed below, the court will grant plaintiff's motion for summary judgment, deny the Commissioner's cross-motion for summary judgment, and remand this matter under sentence four of 42 U.S.C. § 405(g) for immediate payment of benefits.

BACKGROUND

Plaintiff, born December 21, 1984, applied for DIB and SSI, alleging disability beginning January 1, 1992. Administrative Transcript ("AT") 14, 227-241, 253. Plaintiff alleged he was unable to work due to mental impairments. In a decision dated June 20, 2013, the ALJ

determined that plaintiff was not disabled.[1]  AT 14-27.  The ALJ made the following findings (citations to 20 C.F.R. omitted)

> 1.  The claimant meets the insured status requirements of the Social Security Act through March 31, 2010.
>
> 2.  The claimant has not engaged in substantial gainful activity since January 1, 1992, the alleged onset date.
>
> 3.  The claimant has the following severe impairments:  borderline intellectual functioning (BIF) and attention deficit hyperactivity disorder (ADHD).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

   The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant could understand, remember, and carry out very short and simple instructions.  He could make judgments on very simple work related decisions.  He could interact appropriately with supervisors.  He could occasionally interact with the public.  He could work in an environment with coworkers so long as the job tasks do not require coordination with co-workers and he could work independently.  He could respond appropriately to the usual work situations and changes in a routine work setting.
>
> 6. The claimant has no past relevant work.
>
> 7. The claimant was born on December 21, 1984 and was 7 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.
>
> 8. The claimant has at least a high-school education and is able to communicate in English.
>
> 9. Transferability of job skills is not an issue in this case because the claimant does not have past relevant work.
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 1992, through the date of this decision.

AT 16-26.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed error at step three of the sequential analysis in finding that plaintiff did not meet or equal Listing 12.05C.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d 625, 630 (9th

1    Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is
2    responsible for determining credibility, resolving conflicts in medical testimony, and resolving
3    ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).
4    "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one
5    rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).
6         The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th
7    Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's
8    conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not
9    affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see
10   also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the
11   administrative findings, or if there is conflicting evidence supporting a finding of either disability
12   or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226,
13   1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in
14   weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).
15   ANALYSIS
16        Plaintiff contends he meets Listing 12.05C and is therefore presumptively disabled. The
17   Social Security Regulations "Listing of Impairments" is comprised of impairments to certain
18   categories of body systems that are severe enough to preclude a person from performing gainful
19   activity. Young v. Sullivan, 911 F.2d 180, 183-84 (9th Cir. 1990); 20 C.F.R. § 404.1520(d).
20   Conditions described in the listings are considered so severe that they are irrebuttably presumed
21   disabling. 20 C.F.R. § 404.1520(d). In meeting or equaling a listing, all the requirements of that
22   listing must be met. Key v. Heckler, 754 F.2d 1545, 1550 (9th Cir. 1985). It is the disability
23   claimant's burden of proving that his or her impairments meet or equal the required elements of a
24   Listing. Tackett v. Apfel, 180 F. 3d 1094, 1099 (9th Cir. 1999).
25        To meet a listed impairment, a claimant must establish that he meets each characteristic of
26   a listed impairment relevant to his claim. To equal a listed impairment, a claimant must establish
27   symptoms, signs and laboratory findings "at least equal in severity and duration" to the
28   characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, then to

4

the listed impairment "most like" the claimant's impairment. 20 C.F.R. § 404.1526. A finding of equivalence must be based on medical evidence only. 20 C.F.R. § 404.1529(d)(3).

The Listings under 12.05 describe intellectual disabilities consisting of a "significant subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period," i.e. the onset of the impairment occurred before the individual was age 22. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05. The manifested deficit in adaptive functioning is a prerequisite that must be met by Listings 12.05A-D, along with the individual requirements for each subdivision. Listing 12.05C requires a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

The ALJ acknowledged that plaintiff had a valid full scale IQ of 70, citing to plaintiff's school records. AT 21, 398.[2] At step two of the sequential evaluation, the ALJ also found that plaintiff has an additional mental impairment of attention deficit hyperactivity disorder. AT 17. This finding meets the third requirement of Listing 12.05C. See Fanning v. Bowen, 827 F.2d 631, 633 (9th Cir. 1987) (impairment imposing additional and significant work-related limitation of function met if additional impairment's effect on plaintiff's ability to perform basic work activities is more than slight or minimal); see also Pedro v. Astrue, 849 F.Supp.2d 1006, 1015 (D. Or. 2011 (step two determination of additional impairment satisfies third prong of 12.05C). Whether the ALJ erroneously found plaintiff did not meet Listing 12.05C therefore turns on the ALJ's evaluation of the record regarding the diagnostic description, i.e. significant subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period.

---

[2] In doing so, the ALJ found "questionable" the full scale IQ of 60 assessed by consultative examining psychologist, Dr. Richwerger, who conducted a comprehensive psychological evaluation of plaintiff in October, 2011. AT 20, 432. Dr. Richwerger explicitly indicated that the IQ score appeared to be valid and that there was a 95% confidence interval that plaintiff's IQ was between 57 to 65. AT 431-432. The ALJ did not set forth in the written decision why the school tests were considered to be more reliable and inconsistently stated that Dr. Richwerger's opinion was accorded "great weight." AT 20, 24. Whether the ALJ improperly rejected Dr. Richwerger's assessment of plaintiff's IQ is irrelevant, however, since the ALJ found plaintiff has a valid full scale IQ of 70, which meets the second requirement of Listing 12.05C.

In finding that plaintiff did not meet the first prong of Listing 12.05C, the ALJ explicitly found "no convincing evidence has been presented to show significant deficits in adaptive functioning prior to age 22." AT 21. Upon review of the whole record, the court concludes this finding is not supported by substantial evidence. At the hearing on this matter, medical expert Dr. Herbert Tanenhaus testified regarding whether plaintiff met any Listing. Dr. Tanenhaus initially testified that plaintiff did not meet or equal a Listing. AT 36. However, upon further examination by plaintiff's counsel, when the expert's attention was brought to the specific elements of 12.05C, the doctor testified that plaintiff met all of the requirements, specifically testifying in the affirmative when queried as to whether plaintiff had deficits in adaptive functioning initially manifested during the developmental period. AT 40. The opinion of the medical expert that plaintiff had deficits in adaptive functioning is also supported by substantial evidence, considering the record as a whole. The record shows that plaintiff had failing grades even in special education classes (AT 391, 409-411); plaintiff did not complete schooling past the ninth grade; at the age of seventeen, plaintiff's reading comprehension was at the second grade level and his mathematics skills were those of a fourth grader (AT 375-377); plaintiff completed work in only some classes (AT 400); in ninth grade, plaintiff's intellectual functioning was described as "borderline to mildly deficient" and plaintiff was noted to have "most severe delays in comprehension, applied problems, and dictation" with "deficits in self care skills (hygiene)" and "weaknesses in environmental/interpersonal behaviors" (AT 401). Plaintiff also has a history of low skilled work. AT 273-284 (plaintiff's jobs lasted only three months and generally involved minimal skills such as pushing carts, making coffee, cleaning a store, moving cat and dog food, patching things). In sum, the record demonstrates significant deficits in adaptive functioning prior to age 22. See generally Pedro v. Astrue, 849 F.Supp.2d 1006, 1011-12 (D. Or. 2011) (plaintiff may use circumstantial evidence to demonstrate adaptive functioning deficits, including attendance in special education classes, dropping out of high school, difficulties in reading, writing or math, and low skilled work history); see also Reyna v. Astrue, 2011 WL 2441906 (E.D. Cal June 8, 2011) (plaintiff attended special education classes, failed all classes except wood shop, dropped out in the ninth grade, and held a series of menial positions in which

he had difficulty following directions); Gomez v. Astrue, 695 F.Supp.2d 1049 (C.D. Cal. 2010) (plaintiff attended special education classes, dropped out in the ninth grade, never obtained any other education or job training, and evidence in the record of a long history of teachers' comments noting that plaintiff's performance in school warranted special class placement).

The remaining question is whether to remand this case to the ALJ for further proceedings or to order the payment of benefits. "The decision whether to remand the case for additional evidence or simply to award benefits is within the discretion of the court." Stone v. Heckler, 761 F.2d 530, 533 (9th Cir. 1985). Generally, the Court will direct the award of benefits "in cases where no useful purpose would be served by further administrative proceedings or where the record has been thoroughly developed." Varney v. Secretary of Health and Human Services, 859 F.2d 1396, 1399 (9th Cir. 1987). Remand for payment of benefits is appropriate where the ALJ erred in discrediting evidence and, absent any outstanding issues to be resolved, it is clear from the record that the ALJ would be required to find the plaintiff disabled were such evidence credited. Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).

Here, the record demonstrates that plaintiff meets Listing 12.05C. As such, plaintiff is irrebuttably presumed disabled at step three of the sequential analysis. For the foregoing reasons, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for immediate payment of benefits.

CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 11) is granted.

2. The Commissioner's cross motion for summary judgment (ECF No. 15) is denied.

3. This action is remanded to the Commissioner for immediate payment of benefits.

Dated: August 18, 2014

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

4 gillett.ss